**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Bryan L. CHAMBERS, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 22, 2011.
Filed Dec. 23, 2011.

Bryan L. Chambers, appellant, pro se.

John W. Peck, II, Assistant District Attorney, Greensburg, for Commonwealth, appellee.

BEFORE: BOWES, DONOHUE and FREEDBERG, JJ.

OPINION BY DONOHUE, J.:

Bryan Chambers ("Chambers") appeals from the order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541–9546. Chambers was a juvenile at the time of the commission of his crimes, and was subsequently convicted of, *inter alia*, murder in the second degree in violation of 18 Pa. C.S.A. § 2502(b) and given a mandatory sentence of life in prison without parole. We affirm.

The relevant facts and procedural history of this case were aptly set forth by the trial court as follows: [1]

> Chambers was charged [...] with one count of Murder in the First Degree in violation of 18 Pa.C.S.A. § 2502(a), one count of Murder in the Second Degree in violation of 18 Pa.C.S.A. § 2502(b), one count of Criminal Homicide in violation of 18 Pa.C.S.A. § 2501(a), one count of Criminal Conspiracy (to commit crime of robbery) in violation of 18 Pa.C.S.A. § 903(a)(1), one count of Criminal Conspiracy (to commit crime of kidnapping) in violation of 18 Pa.C.S.A. § 903(a)(1), one count of Criminal Conspiracy (to commit crime of criminal homicide) in violation of 18 Pa.C.S.A. § 903(a)(1), one count of Robbery in violation of 18 Pa. C.S.A. § 3701(a)(1)(i), one count of Kidnapping in violation of 18 Pa.C.S.A.

---

1. In the original text of the trial court opinion, Chambers is referred to as "the Defendant." For consistency, we have substituted "Chambers" for "the Defendant" throughout the opinion.

§ 2901(a), one count of Theft by Unlawful Taking or Disposition in violation of 18 Pa.C.S.A. § 3921(a), one count of Receiving Stolen Property (vehicle) in violation of 18 Pa.C.S.A. § 3925, one count of Receiving Stolen Property (firearm) in violation of 18 Pa.C.S.A. § 3925, one count of Firearms Not to be Carried Without a License in violation of 18 Pa.C.S.A. § 6106(a)(1), one count of Possession of Firearm by Minor in violation of 18 Pa.C.S.A. § 6110.1(a), and one count of Possession of Small Amount [of marijuana] in violation of 35 P.S. § 780–113(a)(31).

Chambers was tried by a jury [in 2003] and convicted of one count of Murder in the Second Degree in violation of 18 Pa.C.S.A. § 2502(b), one count of Criminal Conspiracy (to commit criminal homicide) in violation of 18 Pa.C.S.A. § 903(a)(1), one count of Robbery in violation of 18 Pa.C.S.A. § 3701(a)(1)(i), one count of Criminal Conspiracy (to commit robbery) in violation of 18 Pa.C.S.A. § 903(a)(1), one count of Theft by Unlawful Taking or Disposition (vehicle) in violation of 18 Pa.C.S.A. § 3921(a), one count of Receiving Stolen Property (vehicle) in violation of 18 Pa.C.S.A. § 3925, one count of Firearms Not to be Carried Without a License in violation of 18 Pa. C.S.A. § 6101(a)(1), and one count of Possession of Firearm by Minor in violation of 18 Pa.C.S.A. § 6110.1(a).

Chambers was sentence[d] by [the trial court] on August 28, 2003. [The trial court] imposed the mandatory sentence of life imprisonment for the conviction of murder in the second degree. Chambers received a consecutive sentence of 5 to 10 years for the criminal conspiracy to commit robbery and a concurrent sentence of 5 to 10 years for the robbery conviction. Chambers also received a concurrent sentence of 5 to 10 years at both convictions for criminal conspiracy to commit kidnapping and criminal conspiracy to commit criminal homicide.

Chambers filed timely post[-]sentence motions which were denied by [the trial court] on December 11, 2003.

Chambers filed a timely Notice of Appeal with the Superior Court which affirmed Chambers' conviction and sentence on May 10, 2005.

Chambers filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court on June 10, 2005. The Petition was quashed as untimely filed by Order dated July 25, 2005.

Notice of Intention to Dismiss Motion for Post–Conviction Collateral Relief, 10/19/2010, at 1–3. Chambers sought reconsideration of the denial of his petition for allowance of appeal, which the Supreme Court denied by order dated September 9, 2005. From that time, Chambers had 90 days to file an appeal with the United States Supreme Court. *See* 28 U.S.C.A. 2101(c). However, Chambers did not petition the United States Supreme Court for allowance of appeal. Pursuant to 42 Pa.C.S.A. § 9545(b)(3), "a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." Accordingly, Chambers' judgment of sentence became final on December 9, 2005.[2]

The instant *pro se* PCRA petition was filed on July 19, 2010. The PCRA re-

---

**2.** Although the PCRA court stated that the Supreme Court denied Chambers' petition for reconsideration on September 5, 2005, the record reveals that the Pennsylvania Supreme Court order is dated September 9, 2005. Therefore, Chambers' judgment of sentence became final on December 8, 2005.

quires that a PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment becomes final. 42 Pa. C.S.A. § 9545(b)(1). Therefore, this PCRA petition is untimely on its face. "The PCRA's timeliness requirements are jurisdictional in nature and must be strictly construed; courts may not address the merits of the issues raised in a petition if it is not timely filed." *Commonwealth v. Abu–Jamal,* 596 Pa. 219, 227, 941 A.2d 1263, 1267–68 (2008). There are three statutory exceptions to the timeliness provisions that allow for very limited circumstances under which the late filing of a PCRA petition will be permitted:

(i) the failure to raise a claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

(2) Any petition invoking an exception provided [above] shall be filed within 60 days of the date the claim could have been presented

42 Pa.C.S.A. § 9545(b)(1), (2).

In his PCRA petition, Chambers sought to establish that he has satisfied the exception contained in § 9545(b)(1)(iii) by arguing that the rationale utilized by the United States Supreme Court establishing a new constitutional right in *Graham v. Florida,* —— U.S. ——, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), entitles him to relief. The Commonwealth filed a motion to dismiss, arguing that Chambers was not entitled to relief because *Graham* only applies to juveniles convicted of non-homicide offenses, and his conviction for second-degree murder removes him from the ambit of that decision. The Commonwealth also argued that Chambers failed to meet the 60–day requirement contained in § 9545(b)(2), as he had only until July 16, 2010 to file his petition, but the petition was not filed until July 19, 2010.[3] The PCRA court filed a notice of its intention to dismiss Chambers' PCRA petition pursuant to Pa.R.Crim.P. 907,[4] finding that the petition was not timely filed and that

---

**3.** The *Graham* decision was originally filed on May 17, 2010. On July 6, 2010, the United States Supreme Court made minor, non-substantive modifications to its decision and republished the opinion. The law is clear that Chambers had 60 days from the date the claim could have first been brought in order to file his appeal. 42 Pa.C.S.A. § 9545(b)(2). As no substantive changes were made to the *Graham* decision as a result of the republication, the date upon which Chambers could have first brought this claim was the date the opinion was originally filed, May 17, 2010.

**4.** Rule 907 states, in relevant part:

[T]he judge shall promptly review the petition, any answer by the attorney for the Commonwealth, and other matters of record relating to the defendant's claim(s). If the judge is satisfied from this review that there are not genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal. Pa.R.Crim.P. 907(1).

the constitutional right created under *Graham* did not apply to offenders convicted of murder. Notice of Intention to Dismiss Motion for Post–Conviction Collateral Relief, 10/19/2010, at 4–5. By order dated December 9, 2010, the court dismissed Chambers' PCRA petition.

This timely appeal followed, wherein Chambers raises the following issues for our review:

I. Whether Appellant's *pro se* petition concerning the constitutionality of sentencing juvenile homicide offenders to life without parole sentences was timely filed?

II. Whether Pennsylvania's mandatory sentencing practice violates Article 1 § 13 of the Pennsylvania Constitution and the 8th Amendment of the United States Constitution by sentencing juveniles to life without parole, from the outset, for a 2nd degree murder conviction?

Appellant's Brief at 3.

▮ Our standard of review for an order denying PCRA relief is limited to determining whether the record supports the PCRA court's decision, and whether its ruling is free from legal error. *Commonwealth v. Taylor*, 933 A.2d 1035, 1040 (Pa.Super.2007). Its findings will not be disturbed by this Court unless they have no support in the certified record on appeal. *Commonwealth v. Garcia*, 23 A.3d 1059, 1061 (Pa.Super.2011).

In his first issue on appeal, Chambers argues that his PCRA petition was timely because he filed it within 60 days of the United States Supreme Court's decision in *Graham*. In support of his position, he relies on the well-established "prisoner mailbox rule." Appellant's Brief at 7.

▮ In *Commonwealth v. Jones*, 549 Pa. 58, 700 A.2d 423 (1997), our Supreme Court discussed the particular circumstances of a *pro se* prisoner and the need for the prisoner mailbox rule:

> The situation of prisoners seeking to appeal without the aid of counsel is unique. Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the [. . .] deadline. Unlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the notice is stamped 'filed' or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the *pro se* prisoner is forced to do so by his situation. And if other litigants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private express carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it.

*Id.* at 62, 700 A.2d at 425 (quoting *Houston v. Lack*, 487 U.S. 266, 270–71, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)). Therefore, in the interest of fairness, the prisoner mailbox rule provides that a *pro se* prisoner's document is deemed filed on the date he delivers it to prison authorities for mailing. *Id.* at 63, 700 A.2d at 425.

As evidence of the date upon which he gave his PCRA petition to prison authorities for mailing, Chambers offers only a cash slip indicating that his prison account

was charged for the postage for mailing his PCRA petition on July 15, 2010. As the Commonwealth points out, however, Chambers did not provide the PCRA court with this cash slip, but presented it for the first time as an exhibit appended to his appellate brief.

Our Supreme Court has previously addressed a similar situation. In *Smith v. Pennsylvania Board Of Probation and Parole*, 546 Pa. 115, 683 A.2d 278 (1996), the *pro se*, incarcerated appellant sought to appeal a decision of the Pennsylvania Board of Probation and Parole ("the Board"). *Id.* at 115, 683 A.2d at 279. The Board's decision was filed on March 15, 1994. Pursuant to Pa.R.A.P. 1514(a), the appellant had 30 days in which to file a petition for review (effectively, an appeal from the Board's determination, *see* Pa. R.A.P. 1513–14). However, the appellant's petition was received by the prothonotary of the Court of Common Pleas[5] on April 20, 1994, and the Commonwealth Court subsequently dismissed the petition on the basis that it was untimely. *Id.* at 118, 683 A.2d at 279. The appellant sought reinstatement of his petition, which the Commonwealth Court initially granted. After further *en banc* consideration, it again dismissed the petition as untimely. The appellant then sought allowance of appeal with the Pennsylvania Supreme Court, alleging that he gave his petition to prison officials to mail within the appeal period, on April 14, 1994. *Id.* The appellant also apparently obtained a cash slip that indicated that on April 14, 1994, the Department of Corrections charged his account for postage for mail sent to the Prothonotary of the Philadelphia Court of Common Pleas. The Supreme Court of Pennsylvania granted allowance of appeal to address "whether a *pro se* inmate's appeal [. . .] allegedly placed in the prison mailbox prior to the expiration of the applicable filing period, but which was not received by the Commonwealth Court prothonotary within the filing period, is deemed to be timely filed[.]" *Id.* at 117, 683 A.2d at 278.

The Supreme Court ultimately concluded that in such a situation, the petition would be deemed timely filed. In its decision, the Supreme Court adopted the now well-know "prisoner mailbox rule," holding that "in the interest of fairness, a *pro se* prisoner's appeal shall be deemed to be filed on the date that he delivers the appeal to prison authorities and/or places his notice of appeal in the institutional mailbox." *Id.* at 122, 683 A.2d at 281. In reaching its decision, the Court in *Smith* noted that

> [the] rules of appellate procedure are to be liberally construed to secure the just, speedy, and inexpensive determination of every matter to which they are applicable. Moreover, the extreme action of dismissal should be imposed by an appellate court sparingly, and clearly would be inappropriate when there has been substantial compliance with the rules and when the moving party has suffered no prejudice.

*Id.* at 119, 683 A.2d at 280 (internal citations omitted).

The Court then considered whether the cash slip that the appellant presented in support of his position would be sufficient to establish when the notice of appeal was given to prison authorities or placed in

---

**5.** In its decision, the Supreme Court notes that the appellant mailed his notice of appeal to the wrong court, as it should have been sent to the Commonwealth Court, but concludes that pursuant to Pa.R.A.P. 751, it was deemed received by the Commonwealth Court on the same date it was received by the Court of Common Pleas. *Smith*, 546 Pa. at 119 n. 4, 683 A.2d at 279 n. 4.

the institutional mailbox.[6] It found that "[w]hile the [c]ash [s]lip does not contain all of the information to be provided [. . .] it is nonetheless evidence that Appellant mailed his petition for review within the thirty day filing period." *Id.* at 123, 683 A.2d at 282. The Court held that due to the unique circumstances facing an incarcerated *pro se* petitioner, a cash slip "may be sufficient to establish that an appeal was delivered to prison officials or deposited in the prison mailbox within the [. . .] filing period." *Id.; see also Jones,* 549 Pa. at 64, 700 A.2d at 426. Applying this holding the facts of the case, the Supreme Court concluded:

> As the record before us does not contain the [c]ash [s]lip, the envelope which contained Appellant's petition for review, and which would presumably have a postmark, was destroyed, and evidently there was no opportunity to offer evidence regarding the timeliness of Appellant's appeal, we believe that the most appropriate course of action is a remand to the Commonwealth Court. There, an opportunity should be afforded Appellant to meet his burden of proof and come forward with evidence, such as the [c]ash [s]lip, and/or an affidavit, as to the date that he deposited his notice of appeal with the prison authorities. Although the burden is clearly on Appellant, if the Board so chooses, it may provide evidence that Appellant did not deposit, or could not have deposited, the notice of appeal in the prison mailbox within the thirty day time period for filing. Of course, evidence of routine practices of prison authorities regarding the pick-up and delivery of the mail and any records regarding the dates of the deposit of outgoing mail may be offered

> by the Board in its response. A determination must then be made as to the timeliness of Appellant's appeal.

*Smith,* 546 Pa. at 123, 683 A.2d at 282–83 (footnote omitted).

Accordingly, pursuant to *Smith,* this matter should be remanded to provide Chambers with the opportunity to present evidence, including the cash slip that he appended to his appellate brief, to the PCRA court and for the PCRA court to make a determination as to the timeliness of the filing of his PCRA petition. In light of our disposition of Chambers' substantive argument, however, we conclude that it would be futile to do so. We turn to that issue now.

Chambers argues that the PCRA court erred by denying his petition because he properly pled and proved the exception to the time bar contained in § 9545(b)(1)(iii). Specifically, Chambers contends that "Pennsylvania's mandatory sentencing practice violates Article 1[,] § 13 of the Pennsylvania Constitution and the 8th Amendment of the United States Constitution by sentencing juveniles to life without parole, from the outset, for a [second-]degree murder conviction[.]" Appellant's Brief at 3. Chambers relies on the reasoning in *Graham v. Florida* to support his argument that as a juvenile offender, he is entitled to protection from a mandatory sentence of life in prison without parole. *Id.* at 4, 7–14.

As our Supreme Court has explained, a petitioner must satisfy two requirements when seeking to invoke the time bar exception contained in 9545(b)(1)(iii):

> Subsection (iii) of Section 9545 has two requirements. First, it provides that

6. While it is apparent that the appellant provided the Supreme Court with the cash slip, it seems that he did not provide the same to the Commonwealth Court, as the Supreme Court makes clear that the neither the cash slip, nor any other indicia of mailing, was contained in the record. *Smith,* 546 Pa. at 123, 683 A.2d at 282.

the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or [the Pennsylvania] Supreme Court after the time provided in this section. Second, it provides that the right 'has been held' by 'that court' to apply retroactively. Thus, a petitioner must prove that there is a 'new' constitutional right and that the right 'has been held' by that court to apply retroactively. The language 'has been held' is in the past tense. These words mean that the action has already occurred, i.e., 'that court' has already held the new constitutional right to be retroactive to cases on collateral review. By employing the past tense in writing this provision, the legislature clearly intended that the right was already recognized at the time the petition was filed.

*Commonwealth v. Abdul–Salaam*, 571 Pa. 219, 226, 812 A.2d 497, 501 (2002). Thus, to satisfy the time bar, Chambers must establish both that *Graham* recognized a new constitutional right and that it applies retroactively.

In *Graham*, the appellant was involved in two robberies in the course of a single night. *Graham*, 130 S.Ct. at 2019–20. The trial court found the appellant guilty of armed burglary and attempted armed burglary. *Id.* at 2020. Because this was not the appellant's first offense, the trial court sentenced him to the maximum sentence authorized, life imprisonment without the possibility of parole. *Id.* The appellant filed a motion appealing his judgment of sentence as unconstitutional under the Eighth Amendment. *Id.* The trial court denied the appellant's motion and the Florida District Court of Appeal affirmed that decision. *Id.*

■ The United States Supreme Court granted *certiorari* and reversed. *Id.* The Court in *Graham* found that because juve-

niles' personalities are still developing and capable of change, a sentence of life imprisonment without the possibility of parole was developmentally inappropriate. *Id.* at 2026. The United States Supreme Court explicitly recognized differences between juvenile and adult offenders such that, in some cases, juveniles are entitled to differential treatment based on age. *Id.* The Court went through a detailed analysis, surveying both the national and global consensuses on life imprisonment without the possibility of parole as applied to juvenile, non-homicide offenders. *Id.* at 2023–26. Then, "guided by the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose," the Court considered whether the sentencing provision violated the Constitution. *Id.* at 2022. The Court ultimately held, based upon these considerations, that the Eighth Amendment of the United States Constitution bars the imposition of life imprisonment without the possibility of parole for non-homicide offenders under the age of 18. *Id.* at 2034. Thus, the Court expressly made a sentence of life without the possibility of parole an unconstitutional sentence as applied to non-homicide, juvenile offenders. Accordingly, the United States Supreme Court vacated the appellant's sentence and remanded for resentencing. *Id.*

Here, Chambers asserts that the reasoning from *Graham* brings his petition within the ambit of the time bar exception in § 9545(b)(1)(iii). In his well-crafted *pro se* brief, Chambers argues that the same considerations upon which the Supreme Court based its decision in *Graham*, such as the emphasis on the "salient characteristics" of juveniles and how they differ from adults, also apply in his situation, and so we should extend that holding to his case.

Appellant's Brief at 8–14. We note that Chambers does not argue that *Graham* creates a new constitutional right that nullifies his mandatory sentence of life in prison without parole. Instead, he argues that the **rationale** of *Graham* should be extended to apply to a juvenile sentenced to life in prison for a second-degree murder conviction and that the extended right should afford him relief under the PCRA. In basing his argument on this distinction between the right created in *Graham* versus an extension of that right, Chambers misapprehends the scope of the timeliness exception embodied in § 9545(b)(1)(iii).

In *Commonwealth v. Ortiz*, 17 A.3d 417 (Pa.Super.2011), which also involved a second-degree murder conviction of a juvenile sentenced to mandatory life imprisonment without the possibility of parole, this Court held that *Graham* does not create a new constitutional right for juveniles convicted of a homicide offense that may be invoked to establish the § 9545(b)(1)(iii) exception to the PCRA's timeliness requirements. It is unclear from the *Ortiz* opinion what precise argument was raised by the defendant, but it appears that Ortiz argued that *Graham*, by its terms, applied to juveniles convicted of second-degree murder.[7] As we have just outlined, that is not the argument that Chambers now makes.

For purposes of deciding whether the timeliness exception to the PCRA based on the creation of a new constitutional right is applicable, the distinction between the holding of a case and its rationale is crucial since only a precise creation of a constitutional right can afford a petitioner relief. While rationales that support holdings are often used by courts to recognize new

rights, this judicial tool is not available to PCRA petitioners.

For example, in *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), the United States Supreme Court **held** that the death penalty is unconstitutional as applied to juvenile offenders. *Id.* at 578, 125 S.Ct. 1183. The **rationale** behind this holding was the Court's finding of a national consensus against the sentencing practice, the severity of the sentence, a juvenile's reduced culpability as compared to adults, and the absence of penological goals served by the punishment. *Id.* at 564–72, 125 S.Ct. 1183. In deciding *Graham*, the Court used the **rationale** employed by the *Roper* Court to **hold** that a sentence of life in prison without the possibility of parole was unconstitutional as applied to juveniles convicted of a non-homicide offense. *See generally Graham*, 130 S.Ct. at 2023–30. These are two very different holdings that utilize the same rationale.

Chambers does not argue that the **holding** of *Graham* applies to his second degree murder conviction—he recognizes that it was limited to non-homicide offenders. Instead, he argues that the **rationale** should be extended to juveniles convicted of homicide and sentenced to life in prison without parole. As more fully discussed *infra*, the rationale used by the Supreme Court is irrelevant to the evaluation of a § 9545(b)(1)(iii) timeliness exception to the PCRA, as the right must be one that has been expressly recognized by either the Pennsylvania or United States Supreme Court. *See* 42 Pa.C.S.A. § 9545(b)(1)(iii); *Abdul–Salaam*, 571 Pa. at 226, 812 A.2d at 501. Thus, for the purpose of the timeli-

---

7. The *Ortiz* decision does not address the retroactivity requirement contained in this timebar exception and it is likewise unnecessary for us to do so here. We note, however, that the Fifth Circuit of the United States Court of Appeals in *In re Sparks*, 657 F.3d 258 (5th Cir.2011), found that *Graham* did, in fact, apply retroactively.

ness exception to the PCRA, only the **holding** of the case is relevant.

As recited, § 9545(b)(1)(iii) requires that the petitioner must be seeking protection under a newly-recognized constitutional right. Although *Graham* does recognize a new constitutional right, that right extends only to juveniles convicted of non-homicide offenses who are sentenced to life in prison without the possibility of parole. The *Graham* Court declined to consider whether this new constitutional right applies to juveniles sentenced to life without parole for a homicide offense. *See Graham*, 130 S.Ct. at 2023. The United States Supreme Court tailored its holding only to juveniles sentenced to life in prison without parole for non-homicide offenses and Chambers does not argue to the contrary.

■ Section 9545(b)(1)(iii) states, in relevant part: "Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that [...] **the right asserted** is a constitutional right that **was recognized** by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section [...]." 42 Pa.C.S.A. § 9545(b)(1)(iii) (emphasis added). Thus, in order to fit under this exception to the PCRA's time bar, a PCRA petitioner must assert relief based on a constitutional right that has been affirmatively recognized by either the United States Supreme Court or the Supreme Court of Pennsylvania. *Abdul–Salaam*, 571 Pa. at 226, 812 A.2d at 501 (holding that for relief pursuant to § 9545(b)(1)(iii), the right asserted by the petitioner must be a constitutional right acknowledged by the Supreme Court of the United States the Pennsylvania Supreme Court); *see also Commonwealth v. Copenhefer*, 596 Pa. 104, 110, 941 A.2d 646, 649 (2007). Chambers makes no such assertion; rather, as explained above, he argues that this Court should apply the time bar exception of the PCRA by extending the rationale employed by the United States Supreme Court in *Graham* to juvenile defendants convicted of a homicide offense. Thus, Chambers is not basing his argument on any newly recognized constitutional right as contemplated by the PCRA. He has failed to meet this requirement of the time bar exception in § 9545(b)(1)(iii) and the outcome is controlled by *Ortiz*.

In concluding, we note that the United States Supreme Court has not yet addressed the issue of whether a mandatory sentence of life imprisonment without the possibility of parole for juveniles convicted of a homicide offense is unconstitutional under the Eighth Amendment, but it has agreed to do so in two homicide cases.[8]

8. On November 7, 2011, the United States Supreme Court granted *certiorari* to two cases involving the constitutionality of the sentence of life without parole for a juvenile convicted of homicide. In *Miller v. Alabama*, 2011 WL 5322568 (2011), the United States Supreme Court will examine the following issues:

1. Does imposition of a life-without-parole sentence on a fourteen-year-old child convicted on homicide violate the Eighth and Fourteenth Amendments' prohibition against cruel and unusual punishment when the extreme rarity of such sentences in practice reflects a national consensus regarding the reduced criminal culpability of young children?

2. Does imposition of a mandatory sentence of life imprisonment without parole on a fourteen-year-old child convicted of homicide—a sentence imposed pursuant to a statutory scheme that categorically precludes consideration of the offender's young age or any other mitigating circumstances—violate the Eighth and Fourteenth Amendments' prohibition on cruel and unusual punishment

Brief for Petitioner, 2011 WL 5322568 (2011), *i. In the "tandem" case, *Jackson v. State of*

Nonetheless, at this point in time, Chambers cannot base his argument on a constitutional right that has been recognized by the United States Supreme Court (or the Pennsylvania Supreme Court). We conclude that the PCRA court did not err by finding that Chambers failed to establish the exception to the PCRA timeliness requirements pursuant to 42 Pa.C.S.A. § 9545(b)(1)(iii) and dismissing his PCRA petition on that basis.

Order affirmed.

BOWES, J. concurs in the result.

*Arkansas,* 2011 WL 5322575 (2011), the United States Supreme Court will consider:

1. Does imposition of a life-without-parole sentence on a fourteen-year-old child convicted of homicide violate the Eighth and Fourteenth Amendments' prohibition against cruel and unusual punishments, when the extreme rarity of such sentences in practice reflects a national consensus regarding the reduced criminal culpability of young children?

2. Does such a sentence violate the Eighth and Fourteenth Amendments when it is imposed upon a fourteen-year-old who did not personally kill the homicide victim, and was not shown even to have anticipated, let alone intended, that anyone be killed?

3. Does such a sentence violate the Eighth and Fourteenth Amendments when it is imposed upon a fourteen-year-old as a result of a mandatory sentencing scheme that categorically precludes consideration of the offender's young age or any other mitigating circumstances?

Brief for Petitioner, 2011 WL 5322575 (2011), *i.

The Pennsylvania Supreme Court also has not yet addressed this issue. It has, however, accepted for review *Commonwealth v. Batts,* 603 Pa. 65, 981 A.2d 1283 (2009), to address the following issues: "(1) Is sentencing a 14-year-old offender to die in prison unconstitutional in light of *Roper v. Simmons* []? (2) Does the mandatory nature of the sentence in this case violate [petitioner's] rights under the 8th and 14th Amendments to the United States Constitution?" *Id.* Our Supreme Court expressly reserved ruling until the U.S. Supreme Court handed down the *Graham* decision. *Id.* There was no disposition of the *Batts* case at the time of the writing of this Opinion. *But see Commonwealth v. Whitaker,* 30 A.3d 1195 (Pa.Super.2011) (mandatory sentence of life without the possibility of parole for juvenile not unconstitutional decided in the context of a first-degree murder conviction).