J-S74035-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TRENT C. PICKARD | : | |
| | : | |
| Appellant | : | No. 869 EDA 2019 |

Appeal from the PCRA Order Entered February 21, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0403291-2001,
CP-51-CR-0403301-2001

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TRENT C. PICKARD | : | |
| | : | |
| Appellant | : | No. 871 EDA 2019 |

Appeal from the PCRA Order Entered February 21, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0403291-2001,
CP-51-CR-0403301-2001

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:            **FILED JANUARY 17, 2020**

Appellant, Trent C. Pickard, appeals *pro se* from the February 21, 2019, order entered in the Court of Common Pleas of Philadelphia County, which dismissed his second petition filed under the Post-Conviction Relief Act

_____

[*] Former Justice specially assigned to the Superior Court.

("PCRA"), 42 Pa.C.S.A. § 9541-9546, on the basis it was untimely filed. After a careful review, we affirm.

This Court has previously set forth, in part, the relevant facts and procedural history as follows:

> [After his arrest, Appellant proceeded to a jury trial. At trial, the] Commonwealth presented evidence that Appellant operated a drug house on the 2300 block of North 30th Street in Philadelphia. N.T., 9/3/04, at 7-15. One of Appellant's employees in the criminal operation, Waldo "Pee Wee" Wilson, served as a lookout at the drug house. *Id.* Wilson was working outside the drug house on the day the victims, Chad Alexander and Terrell Dean, were killed. Wilson had known the victims from around the neighborhood for 10-15 years. *Id.* at 4, 18. When the drug house had run out of product that evening, Wilson made his way up the street to talk to his sister who lived nearby. *Id.* at 20. Appellant was irate when he found Wilson returning to his abandoned post. Appellant began "cussing" him out for shirking his responsibilities as a lookout. *Id.* at 19-20.
>
> Simultaneously, a customer arrived at the drug house. After discovering that Appellant's operation was out of drugs, he walked over to talk to the victims. Dean and Alexander were standing on a corner across the street from where Appellant and Wilson were arguing. *Id.* at 24. Wilson testified that Appellant abruptly ended their argument, ran across the street, and began firing a gun at Dean and Alexander. *Id.* Wilson observed one of the victims falling to the ground before Wilson ran away. *Id.* at 32.
>
> Other witnesses to the shooting were unable to directly identify Appellant. One eyewitness[, Anthony Newby,] noted that the shooter was wearing a hoodie and sported a Muslim-like beard. *Id.* at 98-99. Another witness observed the verbal altercation between Wilson and Appellant just before the shooting, and noted that Appellant was wearing a hoodie and had "kind of a scraggly beard[.]" *Id.* at 136.
>
> A key witness for the Commonwealth, Roger Vella[,] testified that while incarcerated in the Philadelphia County Jail (PCJ) with Appellant, Appellant told Vella that he had killed two men for encroaching on the territory of his drug business. N.T., 9/5/04, at 57. Vella also testified that he had known Appellant beforehand, going back as far as 1994, and had in the intervening

- 2 -

years worked in concert with Appellant in committing at least two crimes unrelated to the instant matter. *Id.* at 51, 60-63. As a result, Vella said he knew Appellant often wore a fake Sunni Muslim beard when committing criminal acts. *Id.* at 60-63. A former driver and bodyguard for known organized-crime boss Joseph Merlino, Vella was himself charged with murder in an unrelated case when he spoke with Appellant in the PCJ. He was still incarcerated on those charges at the time he testified at Appellant's trial. *Id.* at 51, 53.

The jury convicted Appellant of two counts of third degree murder and related offenses. The trial court sentenced him to an aggregate term of 40-80 years' incarceration. Appellant filed a direct appeal to this Court. We affirmed his judgment of sentence….Our Supreme Court denied Appellant's petition for allowance of appeal [on March 25, 2008,] and the United States Supreme Court denied his petition for writ of *certiorari* [on October 6, 2008].

On August 31, 2009, Appellant filed a timely, *pro se* PCRA petition. PCRA counsel was appointed and, on March 18, 2011, counsel filed an amended petition. Following the Commonwealth's motion to dismiss the amended petition, Appellant filed a second supplemental PCRA petition….[O]n March 23, 2012, the PCRA court formally dismissed Appellant's petition without a hearing.

*Commonwealth v. Pickard*, No. 1229 EDA 2012, at *1-4 (Pa.Super. filed 3/19/13) (unpublished memorandum) (footnote and citations omitted).

Appellant appealed the dismissal of his first PCRA petition, and we affirmed on March 19, 2013. *See id.* Appellant filed a petition for allowance of appeal, which our Supreme Court denied on August 27, 2013.

On April 8, 2015, Appellant filed a *pro se* PCRA petition[1] in which he argued he had "newly-discovered evidence." In support thereof, Appellant attached to his petition a notarized affidavit dated February 12, 2015, from Anthony Newby.[2]

In the affidavit, Newby averred that, during a lengthy interview in February of 2001, an assistant district attorney ("ADA") "used intimidating tactics to force [him] to say [at Appellant's trial] that [he] witnessed [Appellant] commit the murders." Anthony Newby Affidavit, dated 2/12/15, at 1. He further averred that in March of 2001 the ADA "employed intimidating tactics by promising a long prison sentence if [Newby] refused to give the testimony [the ADA] wanted against [Appellant]." ***Id.*** Additionally, he indicated that in June or July of 2001 the ADA approached Newby and told him that if he would "play ball" the ADA would ask the sentencing judge to suspend Newby's sentence. ***Id.***

_____

[1] Although this *pro se* petition was docketed on April 9, 2015, we deem it to have been filed on April 8, 2015, when Appellant, who was incarcerated, handed it to prison officials. ***See Commonwealth v. Chambers***, 35 A.3d 34 (Pa.Super. 2011) (discussing the prisoner mailbox rule).

[2] At trial, Newby testified that, on the day of the incident, he was in the area to purchase drugs when he saw a man wearing a hood shoot the two victims. N.T., 9/3/04, at 94-98. He indicated that he was not close enough to see the shooter's face; however, he noticed the shooter had a Muslim-like beard. ***Id.*** at 98-99, 103.

Moreover, Newby averred that, in March of 2001, he was in a holding cell with Waldo Wilson,[3] who indicated he intended to give perjured testimony against Appellant. *Id.* Specifically, Newby indicated Wilson said to him, "F*ck that ni**er, I don't know him, never seen him. The police want me to say its [*sic*] him, and they're going to throw my cases out and let me go home." *Id.*

On March 18, 2018, Appellant amended his *pro se* PCRA petition,[4] and on September 13, 2018, the PCRA court provided Appellant with notice of its intention to dismiss the petition. On February 21, 2019, the PCRA court dismissed Appellant's petition on the basis it was untimely filed. This timely, *pro se* appeal followed.[5] The PCRA court did not direct Appellant to file a

_____

[3] Wilson testified at trial that he was a lookout for the drug house, and he observed Appellant shoot the two victims. N.T., 9/3/04, at 15-32.

[4] Although this *pro se* petition was docketed on March 19, 2018, we deem it to have been filed on March 18, 2018, when Appellant, who was incarcerated, handed it to prison officials. *See Chambers*, *supra* (discussing the prisoner mailbox rule).
    We note the case remained inactive in the lower court from when Appellant filed his second PCRA petition in 2015 until he filed his amended petition in 2018. This Court has not been provided with any reason for the delay.

[5] Appellant filed a single notice of appeal listing both lower court docket numbers. In *Commonwealth v. Walker*, 646 Pa. 456, 185 A.3d 969 (2018), our Supreme Court held "the proper practice under [Pa.R.A.P.] 341(a) is to file separate appeals from an order that resolves issues arising on more than one docket. The failure to do so requires the appellate court to quash the appeal." *Walker*, *supra*, 185 A.3d at 976-77.
    However, in *Commonwealth v. Stansbury*, 219 A.3d 157 (Pa.Super. 2019), this Court discussed *Walker* and declined to quash an appeal where an appellant filed one notice of appeal listing two docket numbers. In that

- 5 -

Pa.R.A.P. 1925(b) statement, and consequently, no such statement was filed.

However, on June 10, 2019, the PCRA court filed a Pa.R.A.P. 1925(a) opinion.

On appeal, Appellant sets forth the following issue in his "Statement of the Questions Involved" (verbatim):

I.    Did the Lower PCRA Court commit reversal [*sic*] error by denying Appellant's PCRA petition as untimely and without holding a full and fair hearing[?]   The PCRA Court's reasoning was not supported by the record, and therefore, is not free of legal error.

Appellant's Brief at 4.

In addressing Appellant's issues, we are mindful that:

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error.  The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

***Commonwealth v. Walls***, 993 A.2d 289, 294-95 (Pa.Super. 2010) (citations omitted).

---

case, the PCRA court advised the appellant "he could appeal the dismissal of his PCRA petition by filing within thirty days **a** notice of appeal from its order." ***Id.*** at 160 (emphasis in original).  This Court concluded the PCRA court's order, which utilized the singular "a" with regard to the filing of a notice of appeal, amounted to a "breakdown in the court system[,]" and therefore, we excused the appellant's lack of compliance with ***Walker***.  ***Id.***
Instantly, the PCRA court informed Appellant he had "thirty (30) days from the date of the order to file **a** notice of appeal to the Superior Court of Pennsylvania." ***See*** Notice, 2/21/19.  Accordingly, the instant case is indistinguishable from ***Stansbury*** in this regard, and we decline to quash on this basis.

In the instant case, the PCRA court concluded that Appellant's petition was untimely filed and failed to plead any valid exception to the timeliness exceptions of the PCRA. Pennsylvania law is clear that no court has jurisdiction to hear an untimely PCRA petition. ***Commonwealth v. Robinson***, 575 Pa. 500, 837 A.2d 1157 (2003). Accordingly, at this juncture, we must determine whether Appellant's April 8, 2015, PCRA petition was timely filed under the PCRA.

The most recent amendments to the PCRA, effective January 19, 1996, provide that a PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking review." 42 Pa.C.S.A. § 9545(b)(3).

The three statutory exceptions to the timeliness provisions in the PCRA allow for very limited circumstances under which the late filing of a petition will be excused. 42 Pa.C.S.A. § 9545(b)(1). To invoke an exception, a petition must allege and the petitioner must prove:

(i)    the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or the law of this Commonwealth or the Constitution or law of the United States;

(ii)   the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

- 7 -

>    (iii)    the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii).

"A petition invoking one of these exceptions must be filed within sixty days of the date the claim could first have been presented."[6] *Commonwealth v. Lawson*, 90 A.3d 1, 5 (Pa.Super. 2014) (citation omitted). "We emphasize that it is the petitioner who bears the burden to allege and prove that one of the timeliness exceptions applies." *Commonwealth v. Marshall*, 596 Pa. 587, 947 A.2d 714, 719 (2008) (citation omitted).

In the case *sub judice*, after we affirmed Appellant's judgment of sentence and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal, Appellant filed a petition for writ of *certiorari* with the United States Supreme Court. The petition was denied the petition on October 6, 2008. Accordingly, Appellant's judgment of sentence became final on

---

[6] Effective December 24, 2018, the legislature amended Section 9545(b)(2) to read: "Any petition invoking an exception provided in paragraph (1) shall be filed within one year of the date the claim could have been presented." *See* 42 Pa.C.S.A. § 9545(b)(2) (effective December 24, 2018). The amendment to Section 9545(b)(2) only applies to "claims arising on [December] 24, 2017, or thereafter." *See id.*, cmt. Appellant filed his current petition presenting his claim related to Newby's affidavit on April 8, 2015, and accordingly, the amended Section 9545(b)(2) does not apply to Appellant's claim.

October 6, 2008, and he had one year from that date, or until October 6, 2009, to file a timely PCRA petition.  ***See*** 42 Pa.C.S.A. § 9545(b).  However, Appellant did not file the instant PCRA petition, which was his second, until April 8, 2015.  Thus, it is patently untimely.  ***See*** 42 Pa.C.S.A. § 9545(b)(1).

This does not end our inquiry, however, as Appellant attempts to invoke the timeliness exception provided for in Section 9545(b)(1)(ii).  Specifically, Appellant contends the exception regarding newly-discovered facts should apply in this case due to the affidavit submitted by Newby.  Appellant asserts that, until Newby provided him with the affidavit, "there was simply no way for Appellant to obtain this critical and material evidence."  Appellant's Brief at 12.

> The newly-discovered fact exception:
>
> has two components, which must be alleged and proved. Namely, the petitioner must establish that: 1) the facts upon which the claim was predicated were unknown and 2) could not have been ascertained by the exercise of due diligence. If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection.

***Commonwealth v. Bennett***, 593 Pa. 382, 930 A.2d 1264, 1272 (2007) (quotation marks and citations omitted) (emphasis removed).

Once a petitioner has established the newly-discovered fact exception, he must satisfy the four-part test for after-discovered evidence.  Specifically, he must establish that the evidence

> (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach

the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Pagan*, 597 Pa. 69, 950 A.2d 270, 292 (2008) (citation omitted). Our Supreme Court has noted that each of these elements, "if unproven by the petitioner, is fatal to the request for a new trial." *Commonwealth v. Small*, 647 Pa. 423, 189 A.3d 961, 972 (2018). In addition, the Supreme Court has held the proposed new evidence must be producible and admissible. *Id.*

In the case *sub judice*, assuming, *arguendo*, Appellant met the initial sixty day threshold, as well as the newly-discovered facts timeliness exception with regard to the presentation of Newby's affidavit, we agree with the PCRA court that Appellant did not meet the requirements for the four-part after-discovered evidence test.

With regard to Newby's assertions in the affidavit that Wilson told him he intended to offer perjured testimony against Appellant, such assertions would be used solely to impeach the credibility of Wilson. As the PCRA court indicated:

> The allegations in the affidavit, in so far as they relate to Wilson, would be used purely for the purposes of impeachment. Newby alleged that he had a discussion with Wilson in a holding cell prior to trial. Newby indicated that during this discussion, Wilson stated that he did not know [Appellant] but was going to identify him as the shooter because he was offered a deal. These statements would have been solely for the purposes of impeachment.

PCRA Court's Opinion, filed 6/10/19, at 6. Accordingly, Appellant did not meet the after-discovered evidence requirements on this basis. *See Pagan*, *supra*.

- 10 -

In addition, we note that Appellant's claim as to what Wilson allegedly told Newby also fails because this proffered after-discovered evidence was not producible and admissible. **Small**, **supra**. Newby's summary of what Wilson allegedly told him is clearly inadmissible hearsay. **See Commonwealth v. Yarris**, 557 Pa. 12, 731 A.2d 581, 592 (1999) (explaining an after-discovered evidence claim "which rests exclusively upon inadmissible hearsay is not of a type" that would warrant a new trial).

With regard to Newby's assertions in the affidavit that the ADA used intimidating tactics to force him to "say that [he] witnessed [Appellant] commit these murder[,]" threatened Newby with a longer prison sentence if he did not "give the testimony [the ADA] wanted against [Appellant]," and promised to seek a suspended sentence for Newby if Newby "played ball," we conclude such evidence would not likely result in a different verdict if a new trial were granted for Appellant. **See Pagan**, **supra**. As the PCRA court concluded, the record reflects that Newby did not positively identify Appellant at trial as the shooter, and in fact, Newby testified he did not see the shooter's face. **See** PCRA Court's Opinion, filed 6/10/19, at 6.

Moreover, to the extent Newby's affidavit was an attempt to impeach his trial testimony that he saw a man with a Muslim-like beard wearing a hood shoot the victims, such a recantation would not have overcome the testimony of the other witnesses, who established Appellant was the shooter.

Accordingly, Appellant did not meet the after-discovered evidence requirements on this basis. ***See Pagan***, ***supra***.

Finally, to the extent Appellant contends the PCRA court erred in dismissing his PCRA petition without holding an evidentiary hearing, we note:

> [T]he right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

***Commonwealth v. Grayson***, 212 A.3d 1047, 1054 (Pa.Super. 2019) (quotation omitted).

Here, we conclude the PCRA court did not err in declining to hold an evidentiary hearing as Appellant's claim is patently frivolous.[7]

---

[7] We note that, in his March 18, 2018, amended PCRA petition, Appellant asserted the newly-discovered facts timeliness exception on the basis that (1) his sentence is illegal in that the merger doctrine should have been applied at his January 21, 2005, sentencing hearing, and (2) although Vella initially told the FBI that he was a "made member" of the mafia, Vella later admitted he lied in a FBI statement recorded on July 10, 2003, thus calling into question the credibility of Vella as a witness against Appellant.

With regard to the sentencing issue, Appellant has failed to demonstrate that the facts upon which his claim was predicated were unknown or could not have been ascertained by due diligence such that he did not meet the newly-discovered facts exception. ***See Bennett***, ***supra***.

With regard to his issue regarding Vella's misstatement to the FBI, and the extent to which this misstatement impacted Vella's credibility at Appellant's trial, we note this Court previously addressed issues related to

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/17/20

---

Vella's FBI statement in affirming the denial of Appellant's first PCRA petition. **See Commonwealth v. Pickard**, No. 1229 EDA 2012 (Pa.Super. filed 3/19/13) (unpublished memorandum). To the extent Appellant seeks to challenge additional portions of Vella's FBI statement, he has failed to demonstrate the facts upon which his claim was predicated were unknown or could not have been ascertained by due diligence. **See Bennett**, **supra**.