J-S74004-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL MCLEARY, | |
| Appellant | No. 1855 EDA 2013 |

Appeal from the Judgment of Sentence Entered June 4, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002256-2007

BEFORE:  BENDER, P.J.E., DONOHUE, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:             **FILED DECEMBER 22, 2014**

Appellant, Michael McCleary, appeals from the judgment of sentence of 15-30 years' incarceration and 5 years' probation, imposed following his conviction for involuntary deviate sexual intercourse, aggravated indecent assault, unlawful contact with a minor, and endangering the welfare of a child.[1]  After diligently attempting careful review, we quash his appeal.

Appellant was arrested and charged with the above-listed crimes and related offenses—the latter of which were ultimately *nolle prossed* by the Commonwealth—on December 18, 2006.  The offenses are based on the allegations of a juvenile complainant, K.D., the daughter of Appellant's

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Respectively, 18 Pa.C.S. §§ 3123, 3125, 6318, and 4304.

onetime girlfriend, A.M. K.D. was 8-years-old at the time when Appellant sexually abused her. The abuse occurred during a weekend in October of 2006, when Appellant, K.D., and A.M. were housesitting for A.M.'s aunt. A.M. spent most of that weekend in an upstairs bedroom of the house due to a medical issue which caused severe swelling of her legs. This left Appellant and K.D. alone together on the first floor for prolonged periods of time, during which Appellant licked K.D.'s vagina, digitally penetrated her, and exposed his penis to her.

Appellant's sexual abuse of K.D. came to light several months later when K.D. told fellow classmates at her daycare facility that Appellant liked little girls. K.D.'s daycare teacher overheard K.D. and contacted a relative of A.M., who, in turn, informed A.M. of K.D.'s comments. Later that evening, K.D. revealed to A.M. the details of the sexual abuse she endured at Appellant's hands. The following day, A.M. took K.D. to a medical clinic for evaluation and also contacted the police.

Appellant's jury trial commenced on February 24, 2010, and the jury returned its verdict on March 1, 2010, finding Appellant guilty of the above-listed offenses. On June 4, 2010, the trial court sentenced Appellant to consecutive terms of 5-10 years' incarceration for involuntary deviate sexual intercourse, aggravated indecent assault, and unlawful contact with a minor, and five years' probation for endangering the welfare of a child. Subsequently, Appellant filed a timely, counseled post-sentence motion,

which was denied by operation of law. He did not file a direct appeal at that time.

On May 27, 2011, Appellant filed a timely, *pro se* PCRA[2] petition seeking reinstatement of his direct appellate rights *nunc pro tunc*, and PCRA counsel was appointed to represent him. However, Appellant wished to proceed with his petition *pro se*, and so the PCRA court conducted a **Grazier**[3] hearing to ensure that Appellant's waiver of PCRA counsel was voluntary. Having concluded that Appellant's waiver of counsel was voluntary, the PCRA court permitted counsel to withdraw and allowed Appellant to proceed with his PCRA petition *pro se*. Ultimately, and by agreement with the Commonwealth, the PCRA court reinstated Appellant's direct appellate rights *nunc pro tunc*.

Appellant then filed a timely, *pro se* direct appeal on June 5, 2013. The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and Appellant complied with that order when he filed his Rule 1925(b) statement on August 23, 2013. Appellant now presents the following issues for our review:

> 1) I, the Appellant / Aggrieved Party was intentionally denied my proper Article III Constitutional Jurisdiction Proceeding, by a Non-Common Law / Unconstitutional Crimen Falsi Jury Trial, Conviction and Sentencing by De Facto Crimen

---

[2] Post Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq*.

[3] **See Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

Repetundarum Tribunal (Court) Official(s) without Ecclesiastical Law Jurisdiction in violation of Article 1, section 9, 10, 25, 26, to the De Jure Pennsylvania-Republic Constitution and Article 1, Article 3, section 2, Article 4, section 1, Article 6, section 1, 2, 3, the 1, 4, 5, 6, 9, 10, 13, and 14 Amendments to the De Jure Republic Constitution for the United States of America as follows:

    a. The conspiracy of two or more under the Color of Law / Color of Authority, Intentional Extrinsic Fraud, Willful Misconduct, Fraudulent Concealment, Denial of Common Law Speedy Trial in violation of Pa.R.Crim.P. 600(A)(2)(G); Lack of Grand Jury Indictment; Defective Crimen Falsi Criminal Information; Intentional Structual Jury ERRORS; and Denial of Loyal Effectiveness, Zealous, Constitutional Assistance of Counsel.

2) I the Defendant-In-Error, Appellant / Aggrieved Party was intentionally denied a full and fair Constitutional Direct Appeal or P.C.R.A. proceedings for three (3) years and Seven (7) months, while the Crimen Repetundarum De Facto Tribunal Official(s) used that to fraudulently file Tax Forms and destroy evidence that was needed by me the Defendant In Error, which is a major breakdown / Breach of Constitutional Due Process. All of the De Fecto Color of Law Respondents, Libellees, Appelles and third party defendants, have intentionally violated my "Yahweh" God given Unalienable Ecclesiastical and Common Law Rights "With Prejudice" that are attached to my De Jure Peace and Friendship Treaty that made and is attached to the de Jure Constitution for the United States of America at Article 6, section 1, 2, 3, the 1, 4, 5, 6, 9 and 14 Amendments.

3) I, the Defendant-In-Error, Aggrieved Party and Appellant was denied my Sui Jurist De Jure Soli, Jure Divino Self Representation Status by special appearance along with my Constitutional and Common Law Defense of Confession and Avoidance pursuant to Federal Rules of Civil Procedure 8 and mandatory rule 13 Counter Claim.

4) As living Soul Beneficiary of the Trust, Authorized Agent, Entitlement-Holder-In-Due Course, Power of Attorney-In-Fact with autograph for my Legal Fiction Surety / Ens Legis Defendant,: MICHAEL FREEMAN MC LEARY™ Private Cestui

- 4 -

> Que Vie Simple Trust; as Defendant-In-Error, Aggrieved Party and Appellant, all Constitutional / Common Law P.C.R.A. Issues are issues at B.A.R. "Coram-Non-Judice" to be included and / or incorporated by reference into the Nunc Pro Tunc Appeal to which I am entitled to and are not subject to "Censuring" by the Crimen Repetundarum P.R.C.A. / Trial Judge-In-Fiction. (SEE: Pa. Constitution at Article 5, section 9, the submitted 1925(b) and incorporated Supplement P.C.R.A. Petition and the rejected 1925(a) Crimen Falsi, Coram-Non-Judice Opinion In ToTo).

Appellant's Brief at viiii [*sic*] (reproduced verbatim).

As is immediately apparent, Appellant's claims are as nonsensical as they are complex. They constitute a gross deviation from the dictates of the Rules of Appellate Procedure, as does the remainder of Appellant's Brief. For instance, Pa.R.A.P. 2116, which governs the "Statement of the Questions Involved" portion of appellate briefs, requires that:

> The statement of the questions involved **must state concisely the issues to be resolved**, expressed in the terms and circumstances of the case but without unnecessary detail. The statement will be deemed to include every subsidiary question fairly comprised therein. **No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby. Each question shall be followed by an answer stating simply whether the court or government unit agreed, disagreed, did not answer, or did not address the question.** If a qualified answer was given to the question, appellant shall indicate the nature of the qualification, or if the question was not answered or addressed and the record shows the reason for such failure, the reason shall be stated briefly in each instance without quoting the court or government unit below.

Pa.R.A.P. 2116(a) (emphasis added).

The above-quoted portion of Appellant's Brief, titled "Questions Presented," utterly fails to conform to the dictates of Rule 2116(a). Not only

are Appellant's issues not concisely stated, but what we can discern from them indicates that each purported issue itself contains numerous claims of error, although rarely is there a discernable claim therein that is recognizable to us as anything but gibberish.

The argument section of Appellant's brief is equally unintelligible. Rule 2119 provides that: "The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part— in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). Appellant's Brief is subdivided, but not remotely in a manner consistent with Rule 2119(a). The headings of the subdivisions in the Argument section of Appellant's Brief rarely direct our attention to any cognizable legal question.

Additionally, Rule 2119(b) provides that:

> Citations of authorities must set forth the principle for which they are cited. Citations of uncodified statutes shall make reference to the book and page of the Laws of Pennsylvania (Pamphlet Laws) or other official edition, and also to a standard digest, where the statutes may be found. Citations of provisions of the Pennsylvania Consolidated Statutes may be in the form: "1 Pa.C.S. § 1928 (rule of strict and liberal construction)" and the official codifications of other jurisdictions may be cited similarly. Quotations from authorities or statutes shall also set forth the pages from which they are taken. Opinions of an appellate court of this or another jurisdiction shall be cited from the National Reporter System, if published therein.

Pa.R.A.P. 2119(b).

Appellant cites to countless authorities, many of which are simply inapplicable in this jurisdiction or completely unrelated to the proposition for which they are cited. Citations of court cases in Appellant's Brief omit both the year of publication and the page(s) upon which the alleged legal proposition can be found, even when Appellant purports to directly quote from those sources. Appellant's brief also fails to comport with Rule 2119(c) and Rule 2119(e), as he fails to cite to any portion of the record wherein his claims of error were preserved for our review.

Appellant's Brief also fails to conform to Rule 2135 ("Length of Briefs"). That rule provides that "a principal brief shall not exceed 14,000 words." Rule 2135(a)(1). "A principal brief that does not exceed 30 pages when produced by a word processor or typewriter shall be deemed to meet the limitations in paragraph (a)(1)[,]" however, "[i]n all other cases, the attorney or the unrepresented filing party shall include a certification that the brief complies with the word count limits." *Id.* Here, the argument section of Appellant's Brief, alone, is made up of sixty pages. Yet, Appellant has not provided us with a certificate of compliance pursuant to Rule 2135(d). Moreover, Appellant's Brief is single spaced, and appears to be in a font smaller than 14-point, in violation of Rules 124(a)(3) and 124(a)(4), respectively.

Appellant's Brief was also untimely filed. Initially, this Court ordered Appellant to file a brief on or before January 28, 2014. On January 24, 2014, Appellant filed an application for an extension of time to file his brief.

We granted Appellant's application, and set a new deadline of March 31, 2014. Appellant then filed a second application for an extension of time to file his brief on March 27, 2014. We granted his second application as well, and set a new due date of April 28, 2014. Nevertheless, Appellant did not file his brief until May 20, 2014.

Appellant did file a "Certificate of Service" with his brief, purporting to establish that he attempted to file it with this court on March 31, 2014. It is true that:

> [W]hen the appellant is (a) acting *pro se* and (b) incarcerated at the time he or she seeks to file an appeal, justice requires the appeal to be deemed "filed" on the date that the appellant deposits the appeal with prison authorities and/or places it in the prison mailbox. The appellant bears the burden of proving that he or she in fact delivered the appeal within the appropriate time period. This rule is appropriately termed the "prisoner mailbox" rule.

**Commonwealth v. Jones**, 700 A.2d 423, 426 (Pa. 1997); **see also Thomas v. Elash**, 781 A.2d 170, 176 (Pa. Super. 2001) (extending the prisoner mailbox rule to all *pro se* legal filings by incarcerated litigants).

Appellant's self-serving "Certificate of Service" does not constitute proof that he deposited his appellate brief with prison authorities and/or placed it in the prison mailbox on or before April 28, 2014. Appellant could have simply placed the earlier date on the certificate at a later time. Furthermore, this 'proof' falls far short of what our Supreme Court accepted as adequate proof necessary to invoke the "prisoner mailbox" rule in **Smith v. Pennsylvania Board Of Probation and Parole**, 683 A.2d 278 (Pa.

1996) (finding sufficient proof of timely filing under prisoner mailbox rule where the appellant provided a cash slip indicating that his prison account had been charged for postage on or before the applicable due date). ***See, e.g.***, ***Commonwealth v. Chambers***, 35 A.3d 34 (Pa. Super. 2011). Moreover, it is simply not plausible that it took 50 days for Appellant's brief to make its way to our Prothonotary.

Even if it were timely, however, Appellant's brief is simply incomprehensible. As we reiterated in ***Commonwealth v. Greenwalt***, 796 A.2d 996 (Pa. Super. 2002):

> While this Court is willing to liberally construe materials filed by a *pro se* litigant, we note that Appellant is not entitled to any particular advantage because []he lacks legal training. As our Supreme Court has explained, "any layperson choosing to represent [himself] in a legal proceeding must, to some reasonable extent, assume the risk that [his] lack of expertise and legal training will prove [his] undoing."

> Consequently, [w]e decline to become … [A]ppellant's counsel. When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a Court will not consider the merits thereof.

***Id.*** at 997 (internal citations omitted, gender terms re-altered).

Since the defects in Appellant's brief are substantial and preclude this Court from conducting any meaningful appellate review, we quash this appeal.

Appeal ***quashed***.

Donohue, J. joins the memorandum.

Strassburger, J. files a dissenting statement.

- 9 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/22/2014