IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bobby Young, : 
             Petitioner : 
              : 
    v. : No. 525 C.D. 2016
              : SUBMITTED: November 21, 2018
              : 
Pennsylvania Board of Probation and : 
Parole, : 
             Respondent : 

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                          FILED: February 7, 2019

Petitioner Bobby Young (Petitioner) petitions for review of Respondent Pennsylvania Board of Probation and Parole's (Board) February 24, 2016 decision dismissing Petitioner's November 23, 2015, administrative appeal as untimely. Due to unresolved evidentiary issues regarding timeliness, we remanded this matter to the Board, resulting in the Board's April 10, 2017 affirmation of its decision to dismiss Petitioner's administrative appeal. Upon review, we vacate the Board's April 10, 2017 ruling and remand for additional proceedings.

On October 23, 1998, Petitioner was found guilty in the Court of Common Pleas of Philadelphia County of multiple counts of Robbery and other related crimes, for which he received an aggregate carceral term of 10 to 30 years in state prison. Certified Record (C.R.) at 1-2, 7-8, 37.[1] Petitioner was subsequently paroled on January 8, 2008,

---

[1] There is conflicting evidence in the Certified Record regarding the precise crimes for which Petitioner was convicted on October 23, 1998. One document shows he was convicted of two counts of Robbery and one count of Possession of an Instrument of Crime, while others show he was

at which point his parole violation maximum date was November 22, 2027. *Id.* at 4-6, 63.

On April 9, 2014, Petitioner was arrested in Upper Darby, Pennsylvania, and, on May 1, 2015, was found guilty of Endangering the Welfare of a Child. Petitioner was sentenced to 21 to 42 months in state prison, followed by 2 years of probation. *Id.* at 11-20, 35-37. The Board held a parole revocation hearing on August 20, 2015, and on September 11, 2015, ordered Petitioner to be recommitted as a Convicted Parole Violator (CPV) to serve 12 months of backtime. *Id.* at 57-78. In addition, the Board recalculated Petitioner's maximum date as April 3, 2029, electing to give him credit for time served at liberty on parole. *Id.* at 77.

On November 30, 2015, the Board received an administrative remedies form from Petitioner, in which Petitioner alleged that the Board had committed numerous legal errors by virtue of its decision to recommit him as a CPV and extend his maximum date. *Id.* at 82-87.[2] On February 24, 2016, the Board dismissed Petitioner's administrative appeal as untimely, explaining that he had failed to submit the appeal within the prescribed 30-day window after the Board had issued its September 11, 2015 decision. *Id.* at 88.[3]

Petitioner then filed his *pro se* Petition for Review with our Court. Of relevance to this opinion, Petitioner claimed therein he had actually timely mailed an

---

convicted of seven counts of Robbery, one count of Possession of an Instrument of Crime, and two counts of Criminal Conspiracy. *See, e.g.*, C.R. at 1-2, 7-8, 37.

[2] Petitioner mailed his administrative appeal to the Board on November 23, 2015. *Id.* at 87-88.

[3] The Board's dismissal letter states that it was mailed to Petitioner on "February 24, 2015." *Id.* at 88. As this date cannot be accurate, we conclude that this is a typo and that the correct mailing date was February 24, 2016. *Id.*; *see* Petitioner's Br. at 10 n.2 (coming to the same conclusion).

administrative remedies form to the Board on September 24, 2015. Petitioner claims that he never received a response, which prompted him to submit "an Amendment of said Form" in November 2015. Petition for Review at 1. In addition, Petitioner stated that he had documentation, in the form of a "cash slip," showing that he had sent the administrative remedies form to the Board on that earlier date, and maintained that he only discovered it had not reached its intended recipient upon receiving the Board's dismissal letter. *Id.*[4]

On October 29, 2016, Petitioner filed an Application for Relief requesting that the Certified Record be supplemented with a copy of the aforementioned cash slip, as well as the administrative remedies form he had allegedly mailed to the Board on September 24, 2015. Application for Relief at 2, 4-5. In addition, Petitioner asserted "[t]o the extent there is a factual dispute, a finding must be made whether the Board had received such document or the late filing is excused." *Id.* at 2. On December 7, 2016, the Honorable Keith Quigley remanded this matter to the Board, for the limited purposes of "consideration of the DC-139A Cash Slip and Administrative Remedies Form and a determination of whether petitioner filed a timely administrative appeal." Commonwealth Court Order, 12/7/16, at 1.[5]

The Board then held an evidentiary hearing on February 1, 2017. Petitioner testified that each prisoner at State Correctional Institution (SCI)-Graterford, where he was incarcerated at the time, is given 8 prepaid, first-class envelopes per month, but that prisoners must pay for any stamps and envelopes beyond that allotment. Supplemental Certified Record (S.C.R.) at 15A-16A. According to Petitioner, the funds

---

[4] Counsel was subsequently appointed to represent Petitioner and formally entered his appearance in this matter via a letter received by the Commonwealth Court on July 20, 2016. Petitioner's Praecipe of Appearance at 1.

[5] We retained jurisdiction over the Petition for Review. Commonwealth Court Order, 12/7/16, at 1.

to pay for these additional mailings are deducted from an inmate's account. These transactions are memorialized with a cash slip, like the one he submitted as proof of timeliness. Each of these cash slips indicates the cost of the mailing and is signed by both the inmate and the correctional officer who issued the slip. *Id.* at 18A-20A, 44A. The inmate puts the cash slip inside the envelope, while keeping a duplicate slip as proof of the transaction, and then drops the letter in the mailbox. *Id.* at 18A, 20A-23A, 41A.

Petitioner explained that, as it was getting towards the end of the September 2015, he was unsure whether he had exhausted his monthly allotment of prepaid envelopes. *Id.* at 16A-17A. Fearing that his administrative remedies form would not be mailed for lack of paid postage, Petitioner "grabbed two cash slips" on September 24, 2015, filled them out, and went to have them signed by "the correctional officer at D Unit at the time." *Id.* Allegedly, both Petitioner and the correctional officer (whose name Petitioner could not recall) signed the slips, whereupon Petitioner put one of the completed cash slips in an envelope addressed to the Board, along with his administrative remedies form, and placed it in the mailbox. *Id.* at 18A-21A, 38A.

Petitioner became concerned when funds were not deducted from his prison account for this alleged transaction and he did not hear back from the Board. *Id.* at 23A-25A. This prompted him to reach out to the Montgomery County Public Defender for assistance. They did not respond. He then mailed another administrative remedies form on November 23, 2015, which Petitioner characterized as an "amendment" to the one he had allegedly submitted on September 24, 2015. *Id.* at 25A-26A. Petitioner admitted that the cash slip was the only concrete proof that showed he had sent an administrative remedies form to the Board on that date. *Id.* at 41A, 43A-44A.

The Board then called Deborah Barnhart, a legal assistant who works for the Board in the Chief Counsel's Office. *Id.* at 48A-49A. Ms. Barnhart testified that she

4

had reviewed the Board's records, both electronic and physical, and had not found anything indicating that the Board had received a timely mailed administrative remedies form from Petitioner. *Id.* at 52A-58A.

On March 21, 2017, the assigned Board Examiner ruled against Petitioner, determining that he had not shown he had challenged the Board's September 11, 2015 decision within the requisite 30-day window. C.R. at 90-91.[6] The Board Examiner found

> THAT A DUPLICATE CASH SLIP SHOULD NOT BE PROOF OF A LETTER BEING MAILED FROM AN SCI. [IT WOULD SET] A DANGEROUS PRECEDENT IF A DUPLICATE CASH SLIP IS ACCEPTED, THE SYSTEM OF DUPLICATE CASH SLIPS CAN BE EASILY MANIPULATED BY INMATES. THE OPTION OF CERTIFIED MAIL SHOULD BE THE ONLY PROOF ACCEPTED. THIS OPTION IS AVAILABLE TO INMATES AT SCI'S [*sic*] WITHIN THE COMMONWEALTH OF PENNSYLVANIA. [PETITIONER] DEMONSTRATED THIS BECAUSE HE SENT HIS LETTER IN NOVEMBER OF 2015 [BY] CERTIFIED MAIL. THIS LETTER ARRIVED AT ITS DESTINATION IN THE CHIEF COUNSEL'S OFFICE.

*Id.* at 90. The Board Examiner concluded that the cash slip submitted into evidence by Petitioner was not proof of a timely filing, stating that the only evidence that could be deemed credible regarding the date of mailing was "A CERTIFIED LETTER OR ANY OFFICIAL TRACKING MECHANISM OF MAIL[.]" *Id.* at 91.

This prompted Petitioner to file his Petition for Review with our Court.[7] Petitioner contends that the Board erred by deeming his administrative challenge

---

[6] This decision was mailed to Petitioner on April 10, 2017. C.R. at 91.

[7] Our standard of review in the context of Board decisions is limited to determining whether the Board violated a petitioner's constitutional rights or committed an error of law, as well as whether the Board's findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

untimely, because the Board Examiner did not make credibility findings regarding Petitioner's testimony and, in contravention of case law, broadly opined that cash slips cannot constitute valid evidence of timeliness. *See* Petitioner's Br. at 17-21. We agree.

In *Smith v. Pennsylvania Board of Probation and Parole*, 683 A.2d 278, 282 (Pa. 1996), our Supreme Court held that certified and other forms of traceable mail cannot be the only forms of acceptable proof regarding whether an inmate has timely filed an appeal, due to concerns rooted in fundamental fairness. The Supreme Court ruled that cash slips and other evidence should be considered on a case-by-case basis, in recognition "of the unique circumstances facing an incarcerated *pro se* petitioner." Additionally, in *Commonwealth v. Jones,* our Supreme Court held that:

> [A] Postal Form 3817, Certificate of Mailing, constitutes proof of the date of mailing. In *Smith*, we [also] said that the "Cash Slip" that the prison authorities gave Smith[,] noting both the deduction from his account for the mailing to the prothonotary and the date of the mailing, would also be sufficient evidence. We further stated in *Smith* that an affidavit attesting to the date of deposit with the prison officials likewise could be considered. This Court has also accepted evidence of internal operating procedures regarding mail delivery in both the prison and the Commonwealth Court, and the delivery route of the mail, to decide the last possible date on which the appellant could have mailed an appeal based on the date that the prothonotary received it. *Miller v. Unemployment Compensation Board of Review*, [. . .] 476 A.2d 364 ([Pa.] 1984). **Proof is not limited to the above examples and we are inclined to accept any reasonably verifiable evidence of the date that the prisoner deposits the appeal with the prison authorities.**

700 A.2d 423, 426 (Pa. 1997) (emphasis added); *see also Kittrell v. Watson*, 88 A.3d 1091, 1097 (Pa. Cmwlth. 2014) (internal citation omitted) ("Under the prisoner mailbox rule, a legal document is deemed 'filed' on the date it is delivered to the proper prison authority or deposited in the prison mailbox. . . . A cash slip constitutes sufficient evidence to show compliance with the prisoner mailbox rule."). Though both *Jones* and

*Smith* addressed proof of timeliness in the context of *judicial* appeals, the same concerns which underpin the holdings in those cases are present in the context of *pro se* inmates seeking to *administratively* challenge Board decisions. *See Kittrell*, 88 A.3d at 1097 ("Recognizing the limitations of incarceration apply equally to all *pro se* inmates, Pennsylvania courts apply the prisoner mailbox rule in a number of legal contexts."); *Thomas v. Elash*, 781 A.2d 170, 176 (Pa. Super. 2001) ("An incarcerated, *pro se* litigant in a civil action is faced with the same difficulties in tracking his filings as an incarcerated defendant pursuing relief, *pro se*, from a criminal conviction.").

In the instant matter, the Board has made a sweeping declaration that cash slips are unacceptable forms of proof that a letter was mailed and that certified mail should be the only proof accepted. The Board's determination is in direct contravention to established Supreme Court precedent in *Jones* and *Smith*. Furthermore, there is no evidence in the record that supports a finding that Petitioner's cash slip was manipulated in any manner.

For these reasons, we are compelled to vacate the Board's April 10, 2017 ruling and remand for further proceedings. On remand, the Board must determine within 60 days whether Petitioner has established that he challenged the Board's September 11, 2015 decision in a timely manner. Petitioner should be given an opportunity to supplement the administrative record with any additional supporting evidence or indicia of reliability. This could include information regarding the identity of the correctional officer who allegedly signed the cash slip or the veracity of the alleged correctional officer's signature on the slip. In addition, the Board, if it so chooses, is free to supplement the record with evidence of its own including evidence regarding the cash slip process at SCI-Graterford during the time period in which Petitioner allegedly mailed his September 2015 administrative remedies form, or evidence that Petitioner manipulated the at-issue cash slip. Ultimately, the burden of proof remains

7

on Petitioner to show, by a preponderance of the evidence, that he mailed an administrative remedies form to the Board within the 30-day appeal window. *Smith*, 683 A.2d at 282.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bobby Young,                              :
                        Petitioner        :
                                          :
      v.                                  :     No. 525 C.D. 2016
                                          :
Pennsylvania Board of Probation and       :
Parole,                                   :
                        Respondent        :

# **O R D E R**

AND NOW, this 7th day of February, 2019, the Pennsylvania Board of Probation and Parole's April 10, 2017 ruling is VACATED and this matter is REMANDED for additional proceedings, within 60 days of the date of this Order, consistent with the holding of this opinion.

Jurisdiction retained.

 

ELLEN CEISLER, Judge