J-S68008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
RUBEN RICHARD CRAIG, III :
:
Appellant : No. 203 WDA 2019

Appeal from the Order Entered September 14, 2018
In the Court of Common Pleas of Venango County Criminal Division at
No(s): CP-61-CR-0000597-2016

BEFORE: GANTMAN, P.J.E., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED JANUARY 27, 2020**

Ruben Richard Craig, III (Craig) appeals[1] from the September 14, 2018

order of the Court of Common Pleas of Venango County (trial court) denying

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] On March 5, 2019, this court issued a Rule to Show Cause why the appeal should not be quashed as untimely as the trial court denied Craig's petition on September 14, 2018, and Craig's *pro se* notice of appeal was not time stamped by the Prothonotary until December 3, 2018. Craig filed a response arguing that the prisoner mailbox rule applied because he gave his notice of appeal to prison authorities for mailing on September 27, 2018. A review of the certified record reveals a DC-138A cash slip from that date, signed by a prison official, indicating that he purchased postage for the notice of appeal on that date. The cash slip lists the trial court docket number for this case and was included with the notice of appeal when filed. Based on this evidence, the appeal was timely filed pursuant to the prisoner mailbox rule. ***Smith v. Pa. Bd. of Probation & Parole***, 683 A.2d 278, 282 (Pa. 1996).

his motion for allowance of appeal *nunc pro tunc*. After careful review, we affirm.

**I.**

A detailed recitation of the facts underlying Craig's conviction is unnecessary as only the procedural history of his case is relevant to his sole issue on appeal. In August 2017, Craig was convicted following a jury trial of, *inter alia*, attempted homicide.[2] Craig represented himself *pro se*, with standby counsel, during his trial and sentencing proceedings and has proceeded *pro se* on appeal. On October 3, 2017, the trial court sentenced Craig to 20 to 40 years' incarceration. On October 17, 2017, Craig filed a post-sentence motion and the trial court denied the motion the next day.[3]

---

[2] 18 Pa.C.S. § 901(a), 2501.

[3] This is the date on which the post-sentence motion was docketed by the trial court. A post-sentence motion must be filed within ten days of the imposition of the sentence, and an untimely motion will not toll the 30-day period within which the defendant must file his notice of appeal. **See** Pa.R.Crim.P. 720(A)(1); Pa.R.A.P. 903(a), (c)(3). The trial court found in its opinion that this motion was untimely. However, the certified record contains the envelope in which Craig mailed the post-sentence motion, which bears a postmark date of October 11, 2017. As discussed in more detail *infra*, the prisoner mailbox rule deems a *pro se* prisoner's legal filings as filed on the date they are delivered to prison authorities for mailing. **See Commonwealth v. Chambers**, 35 A.3d 34, 38 (Pa. Super. 2011); Pa.R.A.P. 121(a). Because the post-sentence motion was placed in the mail on October 11, 2017, before the ten-day filing period had expired, the motion was timely under the prisoner mailbox rule.

Accordingly, Craig had 30 days, or until November 17, 2017, to file his notice of appeal. *See* Pa.R.A.P. 903(a).

Craig sent numerous letters to the trial court after his post-sentence motion was denied. The first, dated November 1, 2017, requested copies of his docket sheet, as they were "needed promptly for filing an appeal." *See* Letter, 11/1/17. The next letter, dated November 2, 2017, requested a copy of his sentencing order. *See* Letter, 11/2/17. Both letters were postmarked the day after they were dated. The first letter was time-stamped by the Prothonotary on November 9, 2017, and the second letter was time-stamped on November 6, 2017.

Next, Craig sent a letter dated November 28, 2017, and postmarked December 1, 2017, that requested a time-stamped copy of his notice of appeal and included a motion for transcripts. *See* Letter, 11/28/17. The letter states in part:

> I realized that the mailing I sent which included my notice of appeal for 597 of 201[5] is marked on the docket entries as "Letter from Defendant" – 1 and 2. There is no entry marking receipt of my notice of appeal. This notice was on a double-sided piece of paper, out of necessity. Its failure to have a docket entry is concerning.

It appears that the Prothonotary's office wrote "no appl filed" on the form request for transcripts that was included with this letter. On December 21, 2017, the trial court issued an order denying the request for transcripts as no appeal had been filed. The Prothonotary sent another letter to Craig on December 28, 2017, stating that multiple staff members had checked both

sides of all filings in his pending cases and did not find a notice of appeal. The notice of appeal that Craig purportedly mailed to the trial court in November 2017 has never been received.

Craig then filed a notice of appeal with a certificate of service dated January 24, 2018, which was docketed by the Prothonotary on February 1, 2018. Craig's direct appeal proceeded from this notice of appeal. This court subsequently dismissed the appeal as untimely but without prejudice for Craig to seek reinstatement of his appellate rights *nunc pro tunc* in the trial court.

Craig then filed the instant motion for allowance of appeal *nunc pro tunc*. At a June 19, 2018 hearing, Craig represented that he timely delivered his notice of appeal to prison authorities for mailing on November 2, 2017, and argued that the prisoner mailbox rule applied to the filing. Notes of Testimony, 6/19/18, at 7. His sole argument then was that he did timely file the notice of appeal, but a breakdown in the mailing system or operations of the court prevented it from being docketed. In support, he offered a copy of a cash slip dated November 2, 2017, that he had marked as "notice of appeal."[4] ***Id.*** at 10. He did not have a copy of the notice of appeal at the hearing but represented that he had a "template" notice of appeal with his belongings in prison. ***Id.*** at 11.

_____

[4] We note that the cash slip says "Legal Mail (NoA 2017/11/02)" above Craig's signature and bears the address of the trial court Prothonotary.

The trial court noted that the Prothonotary had received mail from Craig dated November 2, 2017, and asked whether he had additional cash slips proving that he had sent multiple pieces of mail on that day. *Id.* at 12. Craig said that he did not bring any additional cash slips to the hearing and may have more from that date in prison. He believed the one he had produced was for the notice of appeal because of the notation that appeared on it.

At the hearing, the district attorney presented a notice of appeal his office had received from Craig on November 16, 2017. *Id.* at 16. The notice had been mailed to his office directly and was undated and printed on one-sided paper. *Id.* at 16-17, 23. He did not have the envelope that the notice had been mailed in. The district attorney argued that Craig's letter dated November 1, 2017, requested information that was "needed promptly for filing an appeal," suggesting that Craig did not have the necessary materials to file a notice of appeal ready the very next day. *See* Letter, 11/1/17.

Based on all the evidence presented at the hearing, the trial court determined that Craig had negligently failed to file his notice of appeal. The trial court did not find the cash slip to be credible evidence that Craig filed the notice, as opposed to any of the letters related to the notice that he mailed around that time. The trial court found that the evidence suggested, at best, that Craig negligently sent his notice of appeal to the district attorney's office and not the Prothonotary. As a result, it denied the petition for allowance of

appeal *nunc pro tunc*. Craig appealed the order and he and the trial court have complied with Pa.R.A.P. 1925.

**II.**

Craig's sole issue on appeal concerns the trial court's denial of his motion for allowance of appeal *nunc pro tunc.* We evaluate the trial court's order denying such a motion for an abuse of discretion. ***Commonwealth v. Stock***, 679 A.2d 760, 762 (Pa. 1996).

"Time limitations for taking appeals are strictly construed and cannot be extended as a matter of grace." ***Commonwealth v. Burks***, 102 A.3d 497, 500 (Pa. Super. 2014) (citation omitted). "[A]n appeal *nunc pro tunc* is intended as a remedy to vindicate the right to an appeal where that right has been lost due to certain extraordinary circumstances." ***Stock, supra***, at 764. The time for filing an appeal may only be extended in extraordinary circumstances such as fraud, ineffectiveness of counsel or a breakdown in the operations of the court. ***Id.*** at 763-64. An appellant's negligence does not excuse the failure to file a timely notice of appeal. Thus,

> Where an appeal is not timely because of non-negligent circumstances . . . and the appeal is filed within a short time after the appellant or his counsel learns of and has an opportunity to address the untimeliness, and the time period which elapses is of very short duration, and appellee is not prejudiced by the delay, the court may allow an appeal *nunc pro tunc*.

***Fischer v. UPMC Northwest***, 34 A.3d 115, 122 (Pa. Super. 2011) (internal quotations and emphasis omitted).

Craig argues that he timely filed his notice of appeal pursuant to the prisoner mailbox rule, and that its failure to be delivered to the Prothonotary for docketing was not a result of his own negligence. The prisoner mailbox rule provides:

> A *pro se* filing submitted by a prisoner incarcerated in a correctional facility is deemed filed as of the date it is delivered to the prison authorities for purposes of mailing or placed in the institutional mailbox, as evidenced by a properly executed prisoner cash slip or other reasonably verifiable evidence of the date that the prisoner deposited the *pro se* filing with the prison authorities.

Pa.R.A.P. 121(a). "Reasonably verifiable evidence" of timely mailing may include a cash slip, certificate of mailing, certified mail form or affidavit of date of deposit with prison authorities. ***Commonwealth v. Jones***, 700 A.2d 423, 426 (Pa. 1997).

In ***Thomas v. Elash***, 781 A.2d 170 (Pa. Super. 2001), this court addressed whether the prisoner mailbox rule applies when timely post-trial motions were mailed from prison but not received by the court. We held that "an incarcerated litigant must supply sufficient proof of the date of mailing," and noted that the proof of service in that case, which was not notarized, may not have met the appellant's burden. ***Id.*** at 176. We ultimately determined that remand for an evidentiary hearing and factual determination by the trial court was unnecessary under the circumstances of that case, but would be the correct procedure in a case where timeliness was in dispute. ***Id.***; ***see also Jones***, ***supra***, at 426 n.3 ("Where, however, the facts concerning

timeliness are in dispute, a remand for an evidentiary hearing may be warranted."). "Whether [an] appellant actually deposited the notice in the prison mail system by [the deadline] is a factual question." ***Commonwealth v. Cooper***, 710 A.2d 76, 79 (Pa. Super. 1998).

Here, the trial court conducted an evidentiary hearing and made factual findings on the timeliness of Craig's notice of appeal. At the hearing, Craig argued that the trial court was bound to accept his cash slip and representations about its purpose on its face and that the Commonwealth had the burden of disproving those representations. This does not comport with ***Thomas***, ***supra***, where we held that the incarcerated litigant bears the burden of proving timeliness. Moreover, we disagree with Craig's assertion that once a cash slip is presented, the trial court is obligated to treat it as proof positive that the disputed mailing was sent. In making factual determinations regarding timeliness, the trial court is permitted to make credibility determinations based on all facts of record.

Here again, the cash slip was not the sole fact of record. The trial court considered the other circumstances arising in November 2017 when Craig asserts he mailed his notice of appeal. First, on November 2, 2017, the date that appears on the cash slip, Craig sent a letter to the Prothonotary requesting a copy of his sentencing order. On November 1, 2017, Craig sent a letter to the Prothonotary requesting a copy of his docket sheet, as it was "needed promptly for filing an appeal." ***See*** Letter, 11/1/17. This letter

suggests that as of November 1, 2017, Craig was merely preparing to file a notice of appeal but had not yet done so. Both of these letters were postmarked and received by the Prothonotary shortly after Craig placed them in the mail.

Second, the district attorney presented an undated document titled "notice of appeal" that his office had received from Craig on or about November 16, 2017.[5] Third, Craig's letter of November 28, 2017, requesting a time-stamped copy of his notice of appeal indicated that the notice had been filed on a double-sided sheet of paper. The trial court and its Prothonotary searched the court records for the notice or any double-sided filings and were unable to locate any such filing. Finally, the notice of appeal did not arrive in the mail at any later point in the history of this case, despite the fact that the letters Craig mailed in November and December 2017 were promptly delivered to the Prothonotary.

A prisoner benefits from the prisoner mailbox rule only when he actually deposits a filing for mailing with the prison authorities within the deadline for filing and provides sufficient evidence of that fact. Based on all the facts of record, the trial court determined that Craig's cash slip was not credible

---

[5] In addition to filing the notice of appeal and serving it on all parties to the underlying action, an appellant must serve a copy of the notice of appeal on the trial court judge. **See** Pa.R.A.P. 906(a)(2). While the district attorney's office in this case received an undated notice of appeal, there is nothing in the record indicating that the trial court was served with the notice.

evidence that he had mailed a notice of appeal on November 2, 2017, but rather confirmed only that he had mailed another letter pertaining to his appeal on that date. Craig did not provide any additional cash slips to substantiate his claim that he had mailed several envelopes to the Prothonotary on that day. All of Craig's other mailings were delivered without incident, including the letter he deposited on November 2, 2017, and their postmarks and delivery dates align with the dates on the included documents and cash slips.

We also note that Craig first became aware that his appeal may not have been docketed on November 28, 2017, as evidenced by his letter to the Prothonotary on that date. He received further confirmation of this fact via a letter from the Prothonotary informing him that no notice of appeal had been filed on December 28, 2017. Nevertheless, he waited until January 24, 2018, to file his next notice of appeal. As noted in *Fischer, supra*, an appellant seeking to appeal *nunc pro tunc* must not only prove non-negligent circumstances, but also that he remedied the delay by filing a new notice or seeking relief after only a "very short duration" of time.

Under these circumstances, the trial court's determination that Craig negligently failed to file his notice of appeal by the November 17, 2017 deadline is supported by the record and we will not disturb it on appeal. The trial court did not abuse its discretion in denying Craig's motion for allowance of appeal *nunc pro tunc*.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/27/2020