J-A24045-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE LUCIANO-HERRERA | : | |
| | : | |
| Appellant | : | No. 1773 WDA 2019 |

Appeal from the PCRA Order Entered October 31, 2019
in the Court of Common Pleas of Washington County
Criminal Division at No(s): CP-63-CR-0000534-2010

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED JANUARY 22, 2021**

Jose Luciano-Herrera ("Luciano-Herrera")[1] appeals, *pro se*, from the Order dismissing his Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[2]  We affirm.

On February 28, 2010, the body of Jose Medina ("Medina") was discovered on the railroad tracks between Youngstown Street and Strabane Avenue, in Canonsburg, Pennsylvania.  Canonsburg police officers, as well as two paramedics, responded to the scene.  The police observed wounds to Medina's neck and chin.  The police officers called Canonsburg Police

---

[1] The appellant's name is listed as "Luciano-Herrera" and as "Herrera-Luciano" at various points throughout the record.  However, on all *pro se* appellate documents, Luciano-Herrera refers to himself as "Luciano-Herrera."

[2] 42 Pa.C.S.A. §§ 9541-9546.

Detectives Alexander Coghill ("Detective Coghill") and Sergeant Charles Tenney ("Detective Tenney") (collectively, the "Detectives") to investigate. A subsequent autopsy revealed that Medina's death was a homicide caused by 38 stab and incised wounds to the neck.

During the course of the investigation, Canonsburg Police interviewed Samuel Cruz ("Cruz"), who lived in the same rooming house as Luciano-Herrera and worked for the same concrete firm. Cruz indicated that he and Luciano-Herrera had been with Medina on the railroad tracks, and that Luciano-Herrera had stabbed Medina several times. Afterwards, Cruz and Luciano-Herrera went out drinking.

On March 4, 2010, Pennsylvania State Trooper Anthony Leibhart ("Trooper Leibhart") executed a search warrant at Shannon Rae Perez Lucas's apartment, where Luciano-Herrera was staying. During the search, Trooper Leibhart obtained Luciano-Herrera's gray work sweater.

The Canonsburg Police submitted the gray sweater, along with the black sweater that Medina was wearing, to Greensburg Regional Forensic Laboratory ("GRSL") for testing and examination. Testing revealed that Medina's blood was "observed" in thirteen areas of Luciano-Herrera's gray sweater, and "confirmed" in five areas. Testing further revealed that the size of the stain on Luciano-Herrera's gray sweater was in "agreement" with the blood pattern observed on Medina's black sweater. Ashlee Mangan, a forensic serologist at

GRSL, concluded that the blood stains on Luciano-Herrera's gray sweater were of the same size and shape as the blood pattern on Medina's black sweater.

On March 4, 2010, the police interviewed Luciano-Herrera about Medina's murder. The Detectives, and Pennsylvania State Police Trooper Raymond Quiroz, Jr. ("Trooper Quiroz"), conducted the interview. Trooper Quiroz asked investigatory questions of his own, acted as a Spanish-English translator for Luciano-Herrera, and translated questions asked by the Detectives. During the first hour of the interview, which was recorded and transcribed, Luciano-Herrera was given his **Miranda**[3] rights in Spanish, and he waived his rights.

Initially, Luciano-Herrera denied that he was ever at the train tracks that night with Cruz and Medina. After further questioning by the police, Luciano-Herrera stated that Medina had hit him and threatened to kill him in the past. Luciano-Herrera continued to deny that he had killed Medina, but admitted that he had struck Medina several times. Luciano-Herrera insisted that Cruz had actually stabbed and killed Medina. Luciano-Herrera stated that he was scared and held Medina while Cruz stabbed Medina.

At some point during the interview, Luciano-Herrera indicated that he wanted an attorney present. After a couple of minutes, Luciano-Herrera indicated that he wanted to continue speaking with police, but only if the

---

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

recording device was turned off. During this second, unrecorded, statement, Luciano-Herrera demonstrated how he held Medina during the stabbing, admitted that he had stabbed Medina in the leg, and stated that he had heard gurgling sounds coming from Medina's throat and mouth.

On November 5, 2010, Luciano-Herrera filed an Omnibus Pre-Trial Motion alleging, *inter alia*, that Luciano-Herrera's due process and **Miranda** rights had been violated because Trooper Quiroz lacked certification to act as a translator, was an investigator on the case, and had continued to question him after Luciano-Herrera had asked for an attorney. After a hearing, the trial court denied Luciano-Herrera's Motion.

On March 4, 2011, after a bench trial, Luciano-Herrera was found guilty of murder in the first degree and conspiracy.[4] On May 12, 2011, the trial court sentenced Luciano-Herrera to life in prison without the possibility of parole.

On June 20, 2013, this Court affirmed Luciano-Herrera's judgment of sentence, and the Pennsylvania Supreme Court denied Luciano-Herrera's Petition for allowance of appeal. **See Commonwealth v. Luciano-Herrera**, 82 A.3d 465 (Pa. Super. 2013) (unpublished memorandum), **appeal denied**, 77 A.3d 636 (Pa. 2013).

On March 24, 2014, Luciano-Herrera filed a timely, *pro se*, PCRA Petition. After multiple postponements and changes of counsel, Luciano-

---

[4] 18 Pa.C.S.A. §§ 2502(a), 903(a)(1).

Herrera elected to proceed *pro se*. On August 12, 2019, the PCRA court filed a Pa.R.Crim.P. 907 Notice of Intent to Dismiss Luciano-Herrera's Petition without a hearing. Luciano-Herrera filed timely Objections, and on October 29, 2019, the PCRA court dismissed Luciano-Herrera's Petition.

Luciano-Herrera filed a timely Notice of Appeal[5] and court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

---

[5] Luciano-Herrera's *pro se* Notice of Appeal is dated November 21, 2019. The docket reflects that his Notice of Appeal was not filed until December 2, 2019, outside of the 30-day time limit to appeal. *See* Pa.R.A.P. 903(a) (providing that "the notice of appeal … shall be filed within 30 days after the entry of the order from which the appeal is taken"). However, Luciano-Herrera was in prison at the time that he filed his Notice of Appeal, and is therefore entitled to the benefit of the "prisoner's mailbox rule." *See Commonwealth v. Perez*, 716 A.2d 1287, 1289 (Pa. Super. 1998) (applying the prisoner mailbox rule to notices of appeal). Under this rule, submissions from an incarcerated litigant are deemed to be filed when deposited into the prison mailing system or handed over to prison officials for mailing. Pa.R.A.P. 121(f); *see also Commonwealth v. Chambers*, 35 A.3d 34, 38 (Pa. Super. 2011).

There is no additional documentation indicating when Luciano-Herrera submitted his Notice of Appeal to prison officials to be mailed. However, "[this Court] is inclined to accept **any** reasonably verifiable evidence of the date that the prisoner deposits the appeal with the prison authorities." *Commonwealth v. Perez*, 799 A.2d 848, 851 (Pa. Super. 2002) (emphasis added). Instantly, on November 26, 2019, the PCRA court issued, most likely in response to receiving Luciano-Herrera's Notice of Appeal, its Pa.R.A.P. 1925(b) Concise Statement Order *before* the 30-day appeal period had passed. Moreover, we note that the Thanksgiving holiday was on November 28, 2019, which made Luciano-Herrera's final date to file an appeal November 29, 2019. *See* 1 Pa.C.S.A. § 1908 (providing that "[w]henever the last day of any such period shall fall on … any day made a legal holiday by the laws of this Commonwealth or the United States, such day shall be omitted from the computation."); *see also Commonwealth v. Betts*, 240 A.3d 616, 619 n.5 (Pa. Super. 2020) (considering holiday-related mail delays in prisoner mailbox rule time computations); *Commonwealth v. Patterson*, 931 A.2d 710, 714 (Pa. Super. 2007) (concluding that a *pro se* submission that arrived late for filing by three days, where the two following days fell on a weekend, was presumed timely despite a lack of supporting documentation based on the date of delivery). Given the inherent delays associated with mail delivery, and the totality of the circumstances, we will deem the appeal timely filed.

- 6 -

Luciano-Herrera now presents the following claim for our review: "The [PCRA] court abused its discretion when it dismissed [Luciano-Herrera's PCRA P]etition." Brief for Appellant at 3 (some capitalization omitted).[6]

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of the record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error.

***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

Counsel is presumed to be effective, and "the burden of demonstrating ineffectiveness rests on [the] appellant." ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010).

> To satisfy this burden, an appellant must plead and prove by a preponderance of the evidence that [] (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness there is a reasonable probability that the outcome of the challenged proceeding would have been different. Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim.

---

[6] We observe that Luciano-Herrera raises two distinct claims pertaining to counsel's ineffectiveness in the Argument section of his appellate brief, which are not preserved in his Statement of Questions Involved, as is required by Pa.R.A.P. 2116(a). ***See Commonwealth v. Ivy***, 146 A.3d 241, 254 (Pa. Super. 2016) (stating that failure to raise an issue in the statement of questions involved waives the issue on appeal) (citing Pa.R.A.P. 2116(a)). Nevertheless, we decline to find Luciano-Herrera's claims waived because the PCRA court was able to address his claims in its Opinion. ***See*** PCRA Court Opinion, 1/14/20, at 1-9.

- 7 -

*Commonwealth v. Holt*, 175 A.3d 1014, 1018 (Pa. Super. 2017) (internal citations omitted).

In his first claim, Luciano-Herrera contends that his trial counsel rendered ineffective assistance of counsel by failing to call a DNA expert to examine the blood and hairs found at the crime scene. Brief for Appellant at 7-8. Luciano-Herrera claims that he was prejudiced by his trial counsel's failure to hire a DNA expert to rebut the Commonwealth's DNA expert. *Id.* at 7-8.

"Where a claim is made of counsel's ineffectiveness for failure to call witnesses, it is the appellant's burden to show that the witness existed and was available[.]" *Commonwealth v. Chmiel*, 30 A.3d 1111, 1143 (Pa. 2011). Further, appellant must prove that "counsel was aware of, or had a duty to know of the witness; the witness was willing and able to appear; and the proposed testimony was necessary in order to avoid prejudice to the appellant." *Id.* "The mere failure to obtain an expert [] witness is not ineffective[ assistance of counsel.]" *Id.*

Luciano-Herrera has failed to adequately develop this claim for our review. At no point in the PCRA proceedings, nor before this Court, has Luciano-Herrera identified any alleged DNA expert, the availability of any alleged expert, the alleged duties of trial counsel, or how such an expert's testimony would have avoided prejudice to Luciano-Herrera. *See Chmiel*, *supra*; *see also Commonwealth v. Paddy*, 14 A.3d 431, 443 (Pa. 2011)

(providing that "boilerplate allegations and bald assertions … cannot satisfy a petitioner's burden to prove that counsel was ineffective."). Accordingly, Luciano-Herrera's first claim is waived.

Even if Luciano-Herrera had preserved this claim for our review, the PCRA court addressed it as follows:

> In his closing, defense counsel admitted that [Medina]'s blood was on [Luciano-Herrera]'s sweater and that such evidence was consistent with the testimony of [Luciano-Herrera]. [Luciano-Herrera] testified at trial "[b]oth [Medina and Cruz] fell on top of me." Then he saw Cruz stabbing the victim.
>
> * * *
>
> Since [Luciano-Herrera] admitted to his counsel, to the police, and to the [c]ourt that he had [Medina]'s blood on his clothing, a separate DNA test would be unnecessarily duplicative. Similarly, [Luciano-Herrera] and [Medina] were on the ground together and any hair evidence would be neither exculpatory [n]or inculpatory. [Luciano-Herrera] did not establish that the claim had any merit and [trial counsel] was not ineffective for not pursuing a groundless claim.

PCRA Court Opinion, 1/14/20, at 5-6.

Our review of the record confirms the PCRA court's conclusion. **See** N.T. (Non-Jury Trial Volume 2), 3/2-4/11, at 300-03 (wherein Luciano-Herrera testified that he was beneath Medina while Cruz stabbed Medina, and that Medina's blood was on his clothing). Thus, Luciano-Herrera has failed to demonstrate that his claim has arguable merit. **See Chmiel**, **supra**; **see also Holt**, **supra**. Based upon the foregoing, we cannot grant Luciano-Herrera relief on this claim.

In his second claim, Luciano-Herrera claims that his counsel rendered ineffective assistance by failing to argue and preserve, prior to trial, a due process argument that Trooper Quiroz was improperly acting as both a translator and investigator during his interrogation. Brief for Appellant at 9-15. In particular, Luciano-Herrera asserts that Trooper Quiroz's participation as both a translator and an investigator cannot be permitted because "of the potential for bias." *Id.* at 10. In support, Luciano-Herrera argues that, in translating Luciano-Herrera's Spanish responses into English, Trooper Quiroz misrepresented what Luciano-Herrera said, and would ask him questions in Spanish that the Detectives did not ask in English.[7] *Id.* at 11-15.

---

[7] We note that Luciano-Herrera, in his appellate brief, almost entirely abandons his ineffective assistance of counsel claim and primarily argues that his claim was not previously addressed by this Court on his direct appeal. *See* Brief for Appellant at 10-15; *see also Commonwealth v. Luciano-Herrera*, 82 A.3d 465 (Pa. Super. 2013) (unpublished memorandum at 13-15) (concluding that Luciano-Herrera had waived his claim that Trooper Quiroz should not have acted as a translator and investigator for failure to cite relevant case law).

Nevertheless, in the instant appeal, Luciano-Herrera has claimed his trial counsel rendered ineffective assistance of counsel by failing to argue and preserve due process and exclusionary rule claims with regard to Trooper Quiroz acting as a translator. *See Commonwealth v. Collins*, 888 A.2d 564, 570-71 (Pa. 2005) (providing that a PCRA claim of ineffective assistance of counsel raises a distinct legal ground, rather than an alternative theory in support of the same underlying issue that was raised on direct appeal, and, thus, ineffectiveness claims are distinct from previously litigated issues and may be brought in PCRA proceedings). Accordingly, Luciano-Herrera's ineffective assistance of counsel claim has not been previously litigated, and we will address the merits of that claim.

"[W]here a defendant alleges that counsel ineffectively failed to pursue a suppression motion, the inquiry is whether the failure to file the motion itself is objectively unreasonable, which requires a showing that the motion would be meritorious." *Commonwealth v. Johnson*, 179 A.3d 1153, 1160 (Pa. Super. 2018). "[T]he defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability that the verdict would have been more favorable." *Commonwealth v. Melson*, 556 A.2d 836, 839 (Pa. Super. 1989).

Instantly, the record belies Luciano-Herrera's claim. As the PCRA court noted, Luciano-Herrera's trial counsel *did*, in fact, file an Omnibus Pre-Trial Motion, which included a due process argument that Trooper Quiroz improperly acted as a translator where he was also an investigator on the same case. *See* Omnibus Pre-Trial Motion, 11/5/10, at 1-3 (unnumbered); *see also* PCRA Court Opinion, 1/14/20, at 7-8 (wherein the PCRA court summarizes the contents of the Omnibus Pre-Trial Motion). Moreover, throughout the trial, Luciano-Herrera's trial counsel objected several times to Trooper Quiroz's testimony regarding Luciano-Herrera's interview. *See* N.T. (Non-Jury Trial Volume 1), 3/1/11, at 6-10 (wherein trial counsel placed a continuing objection to Trooper Quiroz's testimony based upon the assertion that Trooper Quiroz was an improper translator); *see also id.* at 159-72

(wherein trial counsel renewed his objection). Accordingly, Luciano-Herrera's claim lacks merit.

Based on the foregoing, we affirm the PCRA court's Order dismissing his PCRA Petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/22/2021